# UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: | ) |
| | ) |
| **KEVIN LYNN THURMON** and | ) Case No. 20-41400-can11 |
| **SUSAN JANE THURMON,** | ) |
| | ) |
| Debtors. | ) |
| _____ | ) |

## MEMORANDUM OPINION AND ORDER SUSTAINING THE UNITED STATES TRUSTEE'S OBJECTION TO DEBTORS' DESIGNATION AS A SUBCHAPTER V SMALL BUSINESS DEBTOR AND OVERRULING THE UNITED STATES TRUSTEE'S LIMITED OBJECTION TO CONFIRMATION

Under the Small Business Reorganization Act of 2019,[1] Congress authorized eligible persons[2] to avail themselves of streamlined chapter 11 bankruptcy relief designed to help small businesses. Subject to certain debt limits and exclusions not pertinent here,[3] a subchapter V small business debtor is a person "engaged in commercial or business activities." The United States Trustee ("UST") objects to these individual debtors' designation as subchapter V small business debtors because they ceased operating their business, sold the assets several months before they filed this case, and are now retired. The UST argues that the debtors therefore are not "engaged" in commercial or business activities. The debtors respond that they nonetheless qualify because the definition does not require them to be "currently engaged" in commercial or business activities. The court agrees with the UST.

---

[1] Small Business Reorganization Act of 2019, Pub. L. No. 116-54, 133 Stat. 1079 (2019), or "SBRA" for short. SBRA became effective February 19, 2020.

[2] A "person" is defined to include individuals, partnerships, and corporations. 11 U.S.C. § 101(41).

[3] Under SBRA, a "small business debtor" is defined as a person engaged in commercial or business activities "that has aggregate noncontingent liquidated secured and unsecured debts . . . of not more than $2,725,625," with certain other requirements and exceptions not relevant here. 11 U.S.C. § 101(51D)(A). The Coronavirus Aid, Relief, and Economic Security Act, or CARES Act, Pub. L. No. 116-136, 134 Stat. 281 (2020) enacted on March 27, 2020, temporarily increases the debt limit to $7,500,000. 11 U.S.C. § 1182(1)(A).

*Findings of Fact*

The parties agreed to submit the issue to the court based on briefing, stipulated facts, and oral argument.[4] The court incorporates herein the *Joint Stipulation of Facts* filed by the UST; the debtors Kevin and Susan Thurmon; the subchapter V trustee, Matt Barberich, Jr.; and the primary secured creditor, Dollar Signs, Inc ("DSI").[5]

*Events Pre-Bankruptcy*

Without repeating in whole cloth what is in the *Joint Stipulation*, the short story is that the Thurmons are married residents of Missouri. Together they own 70% of Dowel, LLC, a Missouri limited liability company. For almost four years, Dowel, LLC operated two pharmacies in Higginsville, Missouri. In April 2020, Dowel, LLC closed the pharmacies and sold almost all the business assets, leaving a substantial deficiency to DSI along with some other business debts.

When the Thurmons filed a voluntary petition for chapter 11 relief some three months later, in early August 2020, Dowel, LLC had no employees, no customers, no vendors, and no intent to resume business activities. Dowel, LLC still owns some outstanding accounts receivable and two cars. DSI retains its liens on those assets. Although Dowel, LLC is not operating, it is still an entity in good standing under Missouri law.

*Events Post-Bankruptcy*

The Thurmons elected to file chapter 11 as subchapter V small business debtors by so designating on their petition. Their debts do not exceed $7,500,000. Since the filing they have

---

[4] No party disputes that the court has jurisdiction to hear and determine this matter and that objections to a debtor's designation as a small business debtor is a core proceeding. *See In re Blanchard*, No. 19-12440, 2020 WL 4032411, at *2 (Bankr. E.D. La. July 16, 2020). As the parties who filed the petition and elected the subchapter V small business debtor election, the Thurmons bear the burden to prove their eligibility under applicable Eighth Circuit authority. *Montgomery v. Ryan* (*In re Montgomery*), 37 F.3d 413, 415 (8th Cir. 1994). *Contra In re Body Transit, Inc.*, 613 B.R. 400, 409, n. 15 (Bankr. E.D. Pa. 2020) (objecting party is the de facto moving party bearing the burden to prove debtor not entitled to subchapter V small business debtor relief).
[5] ECF No. 74.

2

complied with the provisions of subchapter V by timely filing their § 1116(1) documents,[6] the subchapter V status report,[7] all monthly operating reports,[8] and a plan,[9] and by attending the subchapter V status conference.[10] The plan is a consensual plan that all voting classes of impaired claims, including DSI's, have voted to accept.

In the meantime, the UST timely objected to the Thurmons' subchapter V small business debtor designation. DSI originally joined the UST's objection, but has now withdrawn its joinder. The UST has also filed a limited objection to confirmation of the plan to preserve his eligibility argument. He also asserts that if the court strikes the subchapter V designation, the plan as filed cannot be confirmed since it lacks a disclosure statement and does not provide for payment of the UST quarterly fees, as would be required in a nonsubchapter V chapter 11 case.[11]

*Discussion*

The parties agree that the only issue regarding eligibility in this case is whether the Thurmons "are engaged in commercial or business activities" within the meaning of the Bankruptcy Code.[12] The Thurmons make three arguments: (1) the statutory definition of a small business debtor does not say that debtors must be "currently" engaged in business; (2) even if construed that way, they are engaged in business activity since Dowel, LLC is still an entity in

---

[6] ECF Nos. 30, 31; *see* 11 U.S.C. § 1187(a) ("Upon electing to be a debtor under this subchapter, the debtor shall file the documents required by subparagraphs (A) and (B) of section 1116(1) of this title.").

[7] ECF No. 53; *see* 11 U.S.C. § 1188(c) ("Not later than 14 days before the date of the status conference under subsection (c), the debtor shall file with the court and serve on the trustee and all the parties in interest a report that details the efforts the debtor has undertaken and will undertake to attain a consensual plan of reorganization.").

[8] ECF Nos. 44, 62, and 82; *see* 11 U.S.C. § 1187(b) ("A debtor, in addition to the duties provided in this title and as otherwise required by law, shall comply with the requirements of section 308 and paragraphs (2), (3), (4), (5), (6) and (7) of section 1116 of this title."). *See also* 11 U.S.C. § 308(b) (specifying the reports a debtor in a small business case must file).

[9] ECF No. 76; *see* 11 U.S.C. § 1189(b) ("The debtor shall file a plan not later than 90 days after the order for relief.").

[10] ECF Nos. 19, 65; *see* 11 U.S.C. § 1188(a) ("[N]ot later than 60 days after the order for relief under this chapter, the court shall hold a status conference to further expeditious and economical resolution of a case under this subchapter.")

[11] *See* 11 U.S.C. §§ 1129(a)(1) (as it incorporates § 1125) and (a)(12).

[12] The definition of small business debtor with the increased debt limit is currently found in § 1182(1)(A), enacted as part of the CARES Act; prior to the CARES Act, the definition was in § 101(51D). The CARES Act provisions relating to the increased debt limit are currently set to sunset one year after enactment, or by March 27, 2021.

3

good standing; and (3) all the cases thus far unanimously agree that debtors does not have to be "currently" engaged in business to qualify for subchapter V small business relief.

The Thurmons are correct that since February 19, 2020 when subchapter V relief first became available, the only cases to decide the issue have agreed with their interpretation.[13] The court declines to follow those cases, however. The problem with the Thurmons' position is that Congress was not writing on a blank slate when it unveiled subchapter V small business debtor relief in 2020. Several long existing provisions of the Bankruptcy Code use similar "engaged in" language, as do numerous other federal statutes.[14]

Under title 11, for example, § 101(18)(A), which defines persons eligible to file for streamlined and advantageous chapter 12 relief, requires a "family farmer" to be "*engaged in* a farming operation."[15] A "health care provider" under § 101(27A)(A) must be "*primarily engaged*" in offered certain facilities and services.[16] Section 101(44) defines a railroad to include a common carrier "*engaged in* the transportation of individuals or property."[17]

---

[13] *See In re Wright*, No. 20-01035, 2020 WL 2193240 (Bankr. D.S.C. April 27, 2020); *In re Bonert*, 619 B.R. 248 (Bankr. C.D. Cal. 2020) (following *Wright*); *In re Blanchard*, No. 19-12440, 2020 WL 4032411 (Bankr. E.D. La. July 16, 2020) (same).

[14] *See, e.g.,* 33 U.S.C. § 902(3), for employee to be covered by the Longshore and Harbor Workers' Compensation Act, the person must be "engaged in maritime employment." *McGray Construction Co. v. Director, Office of Workers Compensation Programs*, 181 F.3d 1008, 1014 (9th Cir. 1999) (holding that the statutory term "person engaged in maritime employment" means "engaged" on "this job").

[15] *See In re Watford*, 898 F.2d 1525, 1528 (11th Cir. 1990) (adopting the totality of the circumstances test to decide whether a debtor intends to continue to engage in a farming operation for purposes of eligibility for chapter 12 even though not engaged in the physical activity of farming at the time the petition was filed); *contra In re Armstrong*, 812 F.2d 1024, 1028 (7th Cir. 1987).

[16] *In re Banes*, 355 B.R. 532, 535 (Bankr. M.D.N.C. 2006) (in determining whether a patient ombudsman should be appointed for a defunct dental practice, the court noted the definition of "health care business" in § 101(27A) as an entity that is "primarily engaged in offering" health care services was written in the present tense, indicating that Congress was concerned with appointing patient care ombudsmen "in cases where health care businesses seeking bankruptcy protection *are currently engaged in the ongoing care of patients*") (emphasis added).

[17] *In re Pittsburgh & Lake Erie Properties, Inc.*, 290 F.3d 516, 519-520 (3d Cir. 2002) (natural reading of definition of railroad is not for debtor to be a former railroad; the term "engaged in" is in present tense).

When Congress enacted chapter 12 in 1986, numerous courts struggled with what it meant to be "engaged in" farming. How involved in conduct of the farm operations did you have to be?[18] What about passive activities like accepting rent from leased farmland?[19] What if you were no longer farming?[20] Before these sections were added to the Bankruptcy Code, the U.S. Supreme Court in *Toibb v. Radloff* [21] in 1991 grappled with whether to read into § 109 – eligibility for chapter 11 – whether a chapter 7 debtor had to be "engaged in business" to convert to chapter 11. (The short answer: No.) And so on.

In none of these cases, including *Toibb*, could this court find a precise definition of what the phrase "engaged in" – standing alone – means.[22] And that makes sense. We know that when Congress does not define a term, we rely on the word or phrase's plain meaning or common understanding.[23] The plain meaning of "engaged in" means to be actively and currently involved. In § 1182(1)(A) of the Bankruptcy Code, "engaged in" is written not in the past or future but in the present tense. To add the word "currently" to the phrase "engaged in" would be redundant,

---

[18] *E.g., Cottonport Bank v. Dichiara*, 193 B.R. 798, 802 (W.D. La. 1996) (bankruptcy court did not err in finding that debtors who were actively involved in the planting and cultivation of sugar cane crop and who were entirely responsible for planting, cultivating, and harvesting of soybean crops were engaged in farming operations for purposes of chapter 12 eligibility).

[19] *E.g., In re Morgan Strawberry Farm*, 98 B.R. 584 (M.D. Fla. 1989) (individual debtors who leased one farm for cash and suspended operations on another were not "engaged in" farming operation).

[20] *E.g., In re Tart*, 73 B.R. 78 (E.D.N.C. 1987) (people who had sold all their farmland prior to filing and who did not intend to resume any farming operations were not "engaged in" farm activities and did not qualify for chapter 12 relief); *In re Haschke*, 77 B.R. 223, 225 (Bankr. D. Neb. 1987) (same).

[21] 111 S.Ct. 2197, 2199 (1991).

[22] *Black's Law Dictionary* (11th ed. 2019) defines "engage" as "[t]o employ or involve one's self; to take part in; to embark on." In a similar sense, *Black's* defines "engaged in commerce" for purposes of the Fair Labor Standards Act and Federal Employers' Liability Act" to require the employee to be "actually engaged" in the movement of commerce (case authorities omitted). Likewise, an earlier *Black's* edition (5th ed. 1979) stated that "engaged in employment" means "[t]o be rendering service for employer under terms of employment," although that definition is absent in the most current edition.

[23] *E.g., United States v. Belmont*, 831 F.3d 1098, 1100 (8th Cir. 2016) (interpreting the phrase "to engage in the business of importing, manufacturing, or dealing in explosive materials without a license" under 18 U.S.C. § 842(a)(1) in defendant's appeal of criminal conviction).

because the currency of the involvement or activeness is inherent in the idea of being "engaged in" something.

This sense of "engaged in" as incorporating currency is supported by early chapter 12 cases in this circuit. In *In re Tim Wargo & Sons, Inc.*,[24] the Eighth Circuit examined whether a corporation qualified as a "family farmer" under (then) § 101(17)(B) (now § 101(18)(B)). That subsection analogously requires that the family members or relatives who own the corporate entity must "conduct" the farming operation. The Eight Circuit observed that to "conduct" farming, some member of the family at a minimum had to play "an active role in the farming operating taking place on the land."[25] The court compared the active role required to "conduct" a farming operation with being "engaged in" a farming operation, observing that both phrases require "an active role in the operation."[26] Similarly, in discussing whether certain income and debts qualified as arising out of a farming operation, the Eighth Circuit in *In re Easton*, [27] reversed and remanded for the bankruptcy court to examine the nature of the income and debts, stating:

> Those sums cannot be counted as § 101(17)(A) income unless debtors show that they had *some significant degree of engagement in*, played some significant operational role in, or had an ownership interest in the crop production which took place on the [rented] acreage.

(emphasis added).

---

[24] *In re Tim Wargo & Sons, Inc.*, 869 F.2d 1128 (8th Cir. 1998).
[25] 869 F.2d at 1130 (*citing In re Burke*, 81 B.R. 971, 976 (Bankr. S.D. Iowa 1987)).
[26] *Id.*
[27] *In re Easton*, 883 F.2d 630, 636 (8th Cir. 1989). *See also In re Fenske*, 96 B.R. 244, 247 (Bankr. N.D. Iowa 1988) (holding farmers who enrolled in CRP programs could still qualify as family farmers, noting "[t]hose individuals *who while actively engaging in farming*, avail themselves of such programs and thereby maximize the profitability of their operations are no less engaged in a farming operation.") (emphasis added); *In re Paul*, 83 B.R. 709, 713 (Bankr. D. N.D 1988) (recognizing that chapter 12 allows a debtor to scale down their core farming operation, but this "would not be applied to bring debtors who have abandoned their farming operation and have no intention of returning to traditional agricultural production under the protection of Chapter 12"). *Cf. In re Johnson*, 230 B.R. 608, 609 (B.A.P. 8th Cir. 1999) (discussing test for exempting farm tools of trade for purposes of lien avoidance under § 522(f); to be a farmer there must be evidence that the debtor legitimately engaged in a trade which *currently and regularly* uses the specific implements to be exempted) (*citing Production Credit Assoc. of St. Cloud v. La Fond* (*In re LaFond*), 791 F.2d 623, 625 (8th Cir. 1986)) (emphasis added).

In sum, as the Supreme Court in *Toibb* pointed out, "Congress knew how to restrict recourse to the avenues of bankruptcy relief; it did not place Chapter 11 reorganization beyond the reach of a nonbusiness individual debtor."[28] Conversely, if Congress had intended to make all debtors with business debts below the debt cap eligible for subchapter V small business relief regardless of whether the business was still operating, it could have done so. But to read § 1182(1)(A) the way the Thurmons do renders the phrase "engaged in commercial or business activities" superfluous. The Thurmons were not as a matter of fact or law "engaged in commercial or business activities" on the day they filed bankruptcy because they had in fact sold the business with no intent to return to it and were otherwise not active or involved in any commercial or business activities.[29] For the same reason, keeping the empty shell of the former business entity open with the Missouri Secretary of State's office does not render them "engaged" in business activities, either.

The court is therefore compelled to grant the UST's objection to the Thurmons' subchapter V small business debtor designation, which means that, effective as of this date, the Thurmons now proceed as regular chapter 11 debtors.[30]

That takes us to the UST's late-filed objection to confirmation. The UST is the only party objecting to the Thurmons' consensual plan, which would otherwise be ready to confirm. The UST objects that the plan is not confirmable because it is not accompanied by a disclosure statement

---

[28] 111 S.Ct at 2199.

[29] The UST also makes the point that merely paying off residual business debt cannot constitute being engaged in business or commercial activities under the definition of small business debtor in § 1182(1)(A). Although not discussed in this opinion because the nature and amount of the Thurmons' debts are not at issue, § 1182(1)(A) also requires that a small business debtor have debts "not less than 50 percent of which arose from the commercial or business activities of the debtor." *See In re Wright*, No. 20-01035, 2020 WL 2193240, at *3 (Bankr. D.S.C. April 27, 2020) (holding that the restructuring of residual business debt constitutes being engaged in commercial or business activities). The reasoning in *Wright* renders the debt requirements in § 1182(1)(A) superfluous.

[30] Fed. R. Bankr. Proc. 1020(a).

and does not provide for payment of UST fees, as would be required in a nonsubchapter V chapter 11 case. The court overrules the UST's objection.

First, Rule 1020 says a debtor is entitled to proceed as a subchapter V small business debtor "unless and until" the court enters an order finding that that debtor's statement is incorrect. The Thurmons were subchapter V small business debtors when they filed the plan without a disclosure statement, since § 1125 is expressly not applicable to subchapter V small business debtors unless the court for cause orders otherwise.[31] The plan the Thurmons filed was compliant with the Code and Rules when the plan was filed. Despite having raised an eligibility objection months ago,[32] the UST never requested that the court require the Thurmons to file a disclosure statement.[33] The court finds that the UST has in essence waived the right to request a disclosure statement at this late date.

Second, the plan itself substantially complies with § 1125 by containing adequate information. The only "adequate information" within the meaning of § 1125 that the Thurmons' plan lacks relates to feasibility and the court accepted a proffer at the hearing related to feasibility. It would make no sense for confirmation of the plan to be delayed for the filing of a separate disclosure statement when all voting impaired creditors voted in favor of the plan and no party requested the court make § 1125 applicable,[34] suggesting that the information in the plan was adequate for the creditors to determine how to vote. Even if the court required a disclosure statement at this late date, that would not necessarily cause the plan to be reballoted. And there is

---

[31] 11 U.S.C. § 1181(b).
[32] The UST's objection to the designation was filed on August 20, 2020. ECF No. 40.
[33] *See* 28 U.S.C. § 586(a)(3)(B).
[34] *See* 11 U.S.C. § 1181(b): Section 1125 is not applicable, unless the court for cause orders otherwise.

some limited authority for the proposition that when acceptances or rejections are not required and are not solicited, a disclosure statement likewise should not be required.[35]

Accordingly, given the unusual circumstances of this case, the court will not require the Thurmons to file a disclosure statement for their consensual plan to be confirmed. The court does agree with the UST, however, that effective as of the date of this opinion, the Thurmons must comply with the requirement to pay the UST quarterly fees. To satisfy § 1129(a)(12), the Thurmons are ordered to include appropriate language modifying the plan in their proposed order of confirmation, due within 14 days.

## *Order*

The court hereby sustains the UST's objection to the Thurmons' subchapter V election and finds that the Thurmons' statement in the petition as subchapter V small business debtors is incorrect under Rule 1020(a). The court overrules the UST's objection to confirmation of the Thurmons' chapter 11 plan; finds that the requirement to file a disclosure statement has either been waived or is not applicable under the unusual circumstances of this case; and with the agreement of the parties to immediately proceed to confirmation, finds that the applicable requirements of § 1129(a) are otherwise met, subject to the requirement that the Thurmons include language in the order of confirmation to make the plan compliant with § 1129(a)(12). Proposed order due within 14 days.

IT IS SO ORDERED.

DATED: December 8, 2020               /s/ Cynthia A. Norton
                                       U.S. Bankruptcy Judge

---

[35] *See Collier on Bankruptcy* ¶ 1125.02 (Richard Levin & Henry J. Sommer eds., 16th ed.), *citing In re Colony Props. Int'l, LLC*, 2011 Bankr. LEXIS 3658, at *4 (Bankr. S.D. Cal. Sept. 19, 2011); *In re Union County Wholesale Tobacco & Candy Co.*, 3 C.B.C. 2d 844, 8 B.R. 442, 443 (Bankr. D.N.J. 1981). *But see In re Transload & Transport*, 61 B.R. 379, 380 (Bankr. M.D. La. 1986).